NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEBORAH NAGY and ROGER NAGY,<br><br>Plaintiffs,<br><br>v.<br><br>OUTBACK STEAKHOUSE *et al.*,<br><br>Defendants. | Civ. No. 19-18277<br><br>**OPINION** |

THOMPSON, U.S.D.J.

### INTRODUCTION

This matter comes before the Court upon the Motion to Preclude Expert Testimony filed by Defendants Outback Steakhouse and Outback Steakhouse of Florida LLC (collectively, "Defendants"). (ECF No. 7.) Plaintiffs Deborah and Roger Nagy (collectively, "Plaintiffs") oppose. (ECF No. 8.) The Court has decided the Motion based upon the written submissions of the parties and without oral argument, pursuant to Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' Motion to Preclude Expert Testimony is granted.

### BACKGROUND

This is a personal injury action. Plaintiff Deborah Nagy alleges that she was injured on October 18, 2018 at an Outback Steakhouse in Green Brook Township, New Jersey because of a "hazardous condition on the premises." (Compl. ¶¶ 12–14, ECF No. 1-3.) Plaintiff asserts that this hazardous condition was "caused, created, and/or allowed to exist" by Defendants' negligence. (*Id.* ¶ 17.) Plaintiff asserts that she suffered "severe permanent injuries," including loss of use of her organs and bodily functions or systems, as well as severe pain, anguish, and

1

emotional distress. (*Id.* ¶ 18.) Plaintiff Robert Nagy also seeks to recover for loss of consortium. (*Id.* ¶¶ 19–21.) Plaintiffs assert damages of $1,000,000.00. (*Id.* at 7.)

On January 28, 2019, Plaintiffs filed the Complaint in New Jersey Superior Court, Law Division, Middlesex County. (ECF No. 1-3.) On September 24, 2019, Defendants removed this case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (ECF No. 1.) On March 16, 2020, Defendants filed the Motion to Preclude Plaintiffs' Liability Expert Scott Moore's Testimony, or, in the alternative, Motion for an Evidentiary Hearing Pursuant to Rule 104 ("Motion to Preclude"). (ECF No. 7.) Plaintiffs filed an Opposition (ECF No. 9), and Defendants filed a Reply (ECF No. 10). The Motion to Preclude is presently before the Court.

## **LEGAL STANDARDS**

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592–93 (1993) (establishing the rules for admission of expert scientific testimony); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (extending *Daubert* to all expert testimony, not only to scientific expertise). While Rule 702 embraces a "liberal standard of admissibility," *United States v. Downing*, 753 F.2d 1224, 1230 (3d Cir. 1985), the *Daubert* requirements perform an important gatekeeping role, *Kumho Tire,* 526 U.S. at 152; *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994). "Under *Daubert*, courts must address 'a trilogy of restrictions' before permitting the admission of expert testimony: qualification, reliability, and fit." *Mahmood v. Narciso*, 549 F. App'x 99, 102 (3d Cir. 2013) (quoting *Schneider ex rel. Schneider v. Fried*, 230 F.3d 396, 404 (3d Cir. 2003)).

"First, the expert must be qualified as an expert based on a broad range of specialized knowledge, skill or training." *Jama v. Esmor Corr. Servs., Inc.*, 2007 WL 1847385, at *2 (D.N.J.

June 25, 2007) (citing *In re Paoli*, 35 F.3d at 742). Second, "the process or technique the expert used in formulating the opinion [must be] reliable." *In re Paoli*, 35 F.3d at 742. Finally, the requirement of fit is one of relevance. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 152 (1997) (Stevens, J., concurring). "In assessing whether an expert's proposed testimony fits," courts ask "whether [the] expert testimony proffered . . . is sufficiently tied to the facts of the case such that it will aid the jury in resolving a factual dispute." *United States v. Schiff*, 602 F.3d 152, 173 (3d Cir. 2010) (quoting *Daubert*, 509 U.S. at 591) (internal quotation marks omitted). The testimony offered must provide "knowledge *for purposes of the case.*" *In re Paoli*, 35 F.3d at 743 (emphasis in original).

## DISCUSSION

### I. The Moore Report

Defendants seek to preclude the testimony of Plaintiff's liability expert, Scott D. Moore, PE, CSP. Moore is a licensed engineer in New Jersey, New York, and Pennsylvania who specializes in "walkway safety auditing, slip resistance testing of hard surface flooring, construction testing and consulting and forensic engineering." (Moore CV, Defs.' Ex. B, ECF No. 7-5.) Moore inspected the site of Plaintiff's fall on July 30, 2019 at 10:00 A.M., before the restaurant had opened for business that day. (Moore Report at 2, 11, Defs.' Ex. A, ECF No. 7-4.) Moore's Report (the "Report") states that at the time of Moore's inspection, the installed flooring "appeared to be visibly dirty and, in some areas, was visibly greasy and slippery despite being dry." (*Id.*) Moore also observed that the "floors had not been cleaned in days as the trap at the bottom of the floor drain was dry allowing sewer gas to infiltrate the space." (*Id.*) The Report states that this finding contradicts the testimony of Ryan Shannon, Outback's manager at the time of Plaintiff's fall, who testified that the floors were cleaned every night. (*Id.* at 6, 11.)

Moore performed slip resistance testing on the flooring and calculated the "dynamic coefficient of friction (DCOF)." (*Id.* at 14.)[1] According to Moore, a threshold DCOF of 0.42 represents "the standard of care in the industry for slip resistance testing of hard surface flooring." (*Id.*) Moore concluded that the DCOF of the flooring in both wet and dry conditions did not meet this threshold. (*Id.*) Moore further concluded that the risk of slipping "would be exacerbated with the introduction of a surface contaminant," and noted that several witnesses testified that there was a greasy substance on the floor on the day of Plaintiff's fall. (*Id.*)

The Report concludes that (1) there is a direct causal relationship between the substance on the floor and Plaintiff's slip and fall, (2) had the floor been properly cleaned and maintained, Plaintiff would not have fallen, (3) Defendants failed to comply with codes and industry standards for safe walking surfaces, and (4) Defendants failed to adhere to their own policies and procedures for maintaining floor safety. (*Id.* at 21.) The Report's conclusions are based on Moore's inspection in addition to his review of the depositions, surveillance videos, and photographs produced in discovery. (*Id.* at 2–13.) Moore also relied on the standards provided by the ASTM International, National Safety Council, and ASSE regarding walkways. (*Id.* at 15–19.)

## II.     Fit Requirement

Under *Daubert's* fit requirement, an expert's testimony must be "relevant for the purposes of the case and must assist the trier of fact." *Schneider*, 320 F.3d at 404. The Report's conclusions regarding the conditions of the floor do not satisfy this requirement. First, Moore's observation as to a "greasy" substance on the floor on July 30, 2019 does not assist the trier of

---

[1] Moore performed these tests using the BOT-3000E Digital Tribometer and the ANSI A326.3 Test Method for Measuring Wet DCOF of Common Hard-Surface Floor Materials. (Moore Report at 2.)

fact in determining whether there was grease or any other substance on the floor on October 18, 2018, the date of Plaintiff's fall.

Second, Moore performed the slip resistance testing while the floor reportedly was covered in an unknown greasy substance rather than when the floor was clean. (Moore Report at 14.) Plaintiffs argue that, because several witnesses testified that there appeared to be grease on the floor on the day of the fall, Moore's slip resistance testing on July 30, 2019 is relevant. (Opp'n at 16, ECF No. 8.) However, Plaintiffs have not demonstrated that the substance on the floor on the date of the inspection was the same as the alleged substance on the floor on the date of the fall. Therefore, the results of the slip resistance test would not assist the trier of fact.

Plaintiffs additionally argue that Moore's observation that the floors were dirty on the morning of the inspection is relevant because this observation undermines the testimony of Mr. Shannon that Outback had a habit of cleaning the floors every night. (*Id.* at 21.) Evidence of a company's habit or routine practice may be admissible under Rule 406 of the Federal Rules of Evidence. However, Mr. Shannon only testified as to the cleaning procedures at the Green Brook Outback location while he was the manager from June 19, 2018 to December 2, 2018. (Shannon Dep. 7:1–12, Pls.' Ex. A, ECF No. 9.) Therefore, Moore's observations on July 30, 2019 do not undermine Mr. Shannon's testimony and have no bearing on Outback's habit or custom during the time of Plaintiff's fall.

Ultimately, the Court finds that Moore's expert testimony does not meet the requirements set forth in *Daubert* because it would not assist the trier of fact in assessing the elements of Defendants' alleged negligence. Therefore, the Court need not address the additional arguments provided by Defendants, and the Motion to Preclude is granted.

## **CONCLUSION**

For the foregoing reasons, the Motion to Preclude Expert Testimony filed by Defendants Outback Steakhouse and Outback Steakhouse of Florida LLC (ECF No. 7) is granted. An appropriate Order will follow.


Date: August 31, 2020                                  */s/ Anne E. Thompson*
                                                                         ANNE E. THOMPSON, U.S.D.J.