UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **DEBORAH NAGY, et al.,** : | |
| : | Civil Action No. 19-18277(MAS)(DEA) |
| Plaintiffs, : | |
| : | |
| v. : | **MEMORANDUM OPINION & ORDER** |
| : | |
| **OUTBACK STEAKHOUSE, et al.** : | |
| : | |
| Defendants. : | |
| : | |

**Arpert, Magistrate Judge**

This matter is before the Court on a motion by Plaintiffs seeking a ruling that Defendant Outback Steakhouse spoliated evidence by failing to preserve certain video footage of events underlying this lawsuit. ECF No. 57. Defendants Outback Steakhouse and Outback Steakhouse of Florida, LLC (together, "Defendants" or "Outback") oppose the motion.[1] ECF No. 58. Additionally, in their reply brief (ECF No. 61), Plaintiffs argue for the first time that Defendants' failure to produce an internal incident report also supports a finding of spoliation. Defendants were granted leave to file, and filed, a sur-reply. ECF No. 64.

The Court held oral argument on January 9, 2024, during which the Court requested additional briefing from the parties on the issues of spoliation sanctions in connection with the video footage and spoliation with respect to the incident report. On January 19, 2024, the parties submitted their supplemental briefing.

---

[1] According to Defendants, "Outback Steakhouse" is merely a trade name of Defendant Outback Steakhouse of Florida, LLC. For consistency, the Court nevertheless refers to Defendants in plural.

**I. Background**

On October 18, 2018, Plaintiff went to Outback Steakhouse in Greenbrook, New Jersey to have dinner with her husband and two friends. While there, Plaintiff left the table to go to the restroom. As Plaintiff was walking through the restaurant, she slipped and fell. Paramedics were called and Plaintiff was taken by ambulance to the hospital. Testing showed that Plaintiff fractured her hip and femur. The next day, a representative of Outback contacted Plaintiff and was advised she was waiting to undergo surgery.

The area in which Plaintiff slipped and fell was directly outside of the restaurant's kitchen, where prior to the incident Outback's servers entered and exited carrying trays of food and beverages. Pointing to witness deposition testimony, Plaintiff contends there was a "greasy substance" on the floor in the vicinity of where Plaintiff fell. ECF 57-1 at 6.

According to Outback's manager on duty that evening, Ryan Shannon, Outback hosts are to perform a "bathroom check" every 15 minutes. ECF No. 57-7 at 9. As part of that, they inspect the floor as they walk through the restaurant. *Id.* Hosts and servers are to also inspect the floors as they perform their general duties. *Id.* If the hosts or servers notice a substance on the floor, they are to clean it up. *Id.*

Following Ms. Nagy's fall, Shannon called to report the incident to Outback's Insurance/Claims Third Party Administrator, Gallagher Bassett, in accordance with Outback's policies and procedures. He answered a series of questions and was given a "report number." ECF No. 57-7 at 26. Plaintiffs contend that this "report" was neither produced in response to applicable discovery requests nor identified on a privilege log.

Video footage of Ms. Nagy's fall was recorded on the restaurant's surveillance camera. Approximately twelve days after the incident, on October 30, 2018, Outback was served with a

preservation letter demanding that it preserve any and all surveillance video related to the incident for 24 hours preceding and 24 hours following Ms. Nagy's fall. Data from Outback's cameras are overwritten every seven days but, until overwritten, Outback had the ability to save and preserve video footage. According to Shannon, if an incident occurs at the restaurant, the manager on duty would be responsible for preserving the surveillance footage or, if a preservation letter is received, the managing partner would be responsible. ECF No. 57-7 at 22. Shannon testified that Outback does not have a policy requiring the manager on duty to preserve a particular amount of video footage when an incident occurs. He further testified he does not know if Outback has a retention policy. *Id.* at 21.

As the manager on duty, Shannon was tasked with saving video clips of the underlying incident. Initially, Shannon preserved video of only the actual incident—a 19-second video clip—which was sent to the "home office for the insurance adjusters." *Id.* at 24-25. The next day, the office reached back out to Shannon for more video, and he sent them additional video footage. *Id.* The amount of video Shannon ultimately preserved was approximately 27 minutes in length—5 minutes and 36 seconds before Ms. Nagy's fall and about 22 minutes after.

Outback's surveillance camera technology operates on a 7-day loop, and video is continually overwritten. ECF No. 57-16 at 15.[2] Therefore, by seven days after the incident, on or about October 25, 2018, any video footage of the day of the incident was overwritten. Plaintiffs' preservation letter was served on Outback after that time. At the time the preservation letter was served, only the 19-second and 27-minute video clips from the day of the incident were available. Plaintiffs seek a finding of spoliation based particularly on Outback's failure to preserve more of the video footage from prior to Ms. Nagy's fall.

---

[2] The Court here refers to the page number supplied in the ECF header.

3

**II. Legal Standard**

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation", which may give rise to sanctions pursuant to both the Federal Rules of Civil Procedure and the Court's inherent powers. *Sabinsa Corp. v. Prakruti Prod. Pvt. Ltd.*, No. 14-04738, 2023 WL 7298471, at *2 (D.N.J. Nov. 6, 2023). Potential sanctions include dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference; fines; and attorneys' fees and costs. *Mosaid Techs. Inc. v. Samsung Elecs. Co.*, 348 F.Supp.2d 332, 335 (D.N.J. 2004).

The question of whether there has been spoliation of electronically stored information ("ESI"), such as the video recordings at issue here,[3] is governed by Rule 37(e) of the Federal Rules of Civil Procedure. *Bistrian v. Levi*, 448 F. Supp. 3d 454, 467 (E.D. Pa. 2020). Spoliation occurs under Rule 37(e) where "electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). Thus, for the Court to make a finding that spoliation occurred, it must be shown that (1) the ESI should have been preserved in anticipation or conduct of litigation; (2) the ESI was lost; (3) the information was lost because the party failed to take reasonable steps to preserve it; and, (4) the information cannot be recovered elsewhere, restored, or replaced. *Manning v. Safelite Fulfillment, Inc.*, No. 17-2824, 2021 WL 3557582, at *5 (D.N.J. Apr. 29, 2021). The burden is on the moving party to show spoliation has occurred. *Id.*

---

[3] According to deposition testimony of Defendants' manager, the video footage at issue in this case was digital. It was recorded on a "DVR" and the preserved portions the video were saved on a USB "thumb drive". As such, the video footage in this case is electronically stored information governed by Rule 37. ECF No. 57-7 at 24.

4

There are two levels of sanctions for spoliating ESI. First, the Court "upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice". Fed. R. Civ. P. 37(e)(1). In order to find prejudice, the moving party must offer "plausible, concrete suggestions as to what [the lost] evidence might have been". *GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 83 (3d Cir. 2019). Second,

> only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> (A) presume that the lost information was unfavorable to the party;
>
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e)(2).

**III. Analysis**

**A. Video Footage**

The first step of the analysis is to determine whether spoliation occurred.

<u>1. Whether additional video footage should have been preserved in anticipation of litigation</u>

The dispute here centers on video footage from the period of time before Ms. Nagy's fall, which Plaintiff contends is relevant to a number of issues in this negligence action. As noted above, Defendants preserved and produced 27 minutes of video footage, which includes only approximately 5 minutes of footage prior to Ms. Nagy's fall. Consequently, the first question for the Court is whether Defendants should have preserved more than 5 minutes of video footage from the time period immediately prior to the fall.

"Rule 37(e) does not redefine the duty to preserve; rather, it incorporates the common-law duty to preserve relevant information when litigation is reasonably foreseeable." *Bistrian*, 448 F. Supp. 3d at 467-68 (quotations omitted). A litigant is under an obligation to preserve "what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Scott v. IBM Corp.*, 196 F.R.D. 233, 249 (D.N.J. 2000). "An independent duty to preserve relevant evidence arises when the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be caused to the party seeking the evidence if the evidence were to be discarded." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). Determining whether a party had reason to believe that the evidence in question would be required in litigation is governed by a "flexible fact-specific standard that allows a district court to exercise the discretion necessary to confront the myriad factual situations inherent in the spoliation inquiry." *Bull,* 665 F.3d at 77-78.

Ms. Nagy fell in Defendants' restaurant, was taken to from the restaurant in an ambulance, and the next day a representative from Outback was advised that Ms. Nagy was in the hospital awaiting surgery. Defendants were aware of the incident and the fact that Ms. Nagy had sustained serious injuries. Given the circumstances and seriousness of Ms. Nagy's injuries, litigation was reasonably foreseeable. *See Bistrian*, 448 F. Supp. 3d at 469 ("[C]ourts have held that because [slip and fall] incidents so predictably lead to a lawsuit, defendants can often be expected to anticipate litigation soon after the event itself."). Indeed, it is apparent that Defendants themselves immediately anticipated litigation—they contend, as discussed further below, that a record of information reported by Outback's manager on the day of the incident to

6

claims administrator Gallagher Bassett is privileged because it was prepared in anticipation of litigation. *See* ECF No. 84.

Because litigation was foreseeable, Outback had a duty to preserve evidence that it knew, or reasonably should have known, would likely be requested in that litigation. *See Scott*, 196 F.R.D. at 249. Outback, a sophisticated business entity and experienced litigant working with an experienced claims administrator, should have known that more than 5 minutes of video footage prior to Ms. Nagy's fall would be relevant and would be requested by Ms. Nagy in any potential litigation. Indeed, it is hard to imagine evidence that would be more pertinent to Ms. Nagy's claims in this case. The Court agrees with Plaintiffs that such footage would have been probative of issues such as whether a slippery substance was deposited on the floor and, if so, how long it was there, whether Defendants had notice of a condition that could have caused Ms. Nagy's fall, and whether Defendants' employees inspected the floor in accordance with Outback's policies. Under the circumstances here, the Court finds that Outback had a duty to preserve the disputed video footage.

<u>2. Whether the information was lost and cannot be restored or replaced</u>

There is no dispute that, with the exception of the 5 minutes preserved, video footage from the time period before Ms. Nagy's fall has been lost and cannot be recovered or replaced. The Court rejects Defendants' contention that information contained in the lost video footage could be replaced through witness testimony. The surveillance camera was trained directly on the area where Ms. Nagy fell and made a continuous recording of all the activities in its frame. No witness or combination of witnesses had that perspective. Further, as one court has noted, "the unbiased eye of a surveillance camera" can lend credibility to one side's versions of an event when witness testimony conflicts. *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 519 (D.N.J. 2008).

<u>3. Whether Defendants failed to take reasonable steps to preserve</u>

In evaluating whether Outback took reasonable steps to preserve all relevant video, there are three factors that are relevant. *Bistrian*, 448 F. Supp. 3d at 474.

> First, Rule 37(e) recognizes that perfection is often impossible given the "ever-increasing volume of electronically stored information." Second, the Rule is to be applied with sensitivity to a party's "sophistication with regard to litigation." Third, "the routine, good-faith operation of an electronic information system" is a "relevant factor" in evaluating the reasonableness of a party's preservation efforts, "although the prospect of litigation may call for reasonable steps to preserve information by intervening in that routine operation."

*Id.*

A review of this District's and others' electronic dockets show that Outback has defended several similar cases—it is not an unsophisticated litigant. Therefore, the Court concludes, Outback was aware it had a duty to preserve relevant evidence. Yet Defendants' restaurant manager, tasked with preserving video footage, had no guidance as to how much video footage to save; he testified that restaurant managers are "not really given a time frame" as to how much surveillance video to preserve. ECF No. 57-7 at 21. *See also* ECF No. 58 at 3-4 ("Defendant does not have a specific video retention policy regarding accidents; instead, the manager on duty is tasked with preserving relevant surveillance video."). It is unclear to the Court how a sophisticated litigant can reasonably expect to fulfil its duty to preserve evidence by leaving the responsibility of that preservation in the hands of restaurant manager who is given absolutely no guidance as to Outback's preservation duties.

Further, saving additional video footage would not have been unduly burdensome, as the video footage at issue is discrete and relatively brief. Shannon testified that he preserved the video clips by simply downloading them on to a USB thumb drive. Under the circumstances

here, the Court concludes that Outback failed to take reasonable steps to prevent the automatic overwriting of relevant video footage.

### 4. Whether Outback acted with the intent to deprive Plaintiffs of video footage

As a spoliation sanction, Plaintiffs seek an adverse interest jury charge at trial. "Under Rule 37(e), spoliation warrants an adverse inference only if a party acted 'with the intent to deprive another party of the information's use in the litigation'—if, in other words, the spoliating party acted in bad faith." *Bistrian*, 448 F. Supp. 3d at 475. Because direct evidence of intent is not typically available, courts generally look to circumstantial evidence to infer a party's intent. *Id.* Factors that may be consider include the timing of the destruction, whether there was selective preservation, and what preservation policies the party had in place. *Id.*

Outback argues that it did not act in bad faith because Shannon saved what "he reasonably perceived to be relevant to the incident." ECF No. 58. Upon realizing an incident had occurred, he preserved a 19-second video clip of the incident and forwarded the same to the claims administrator. Then, after receiving the short clip, the administrator requested additional footage, and approximately 27 minutes of footage was preserved. Because the remaining footage was automatically overwritten after seven days in the normal operation of the surveillance camera, Outback contends there is no bad faith here.

However, the Court finds the circumstantial evidence here supports the conclusion that Defendants acted with the requisite intent to deprive Plaintiffs of access to relevant video footage. First, video from the day of the incident was reviewed and selectively preserved. Both preserved video clips were also reviewed by an experienced claims administrator. *See Culhane v. Wal-Mart Supercenter*, 364 F. Supp. 3d 768, 773-74 (E.D. Mich. 2019) (finding that party's decision to "preserve some but not all pertinent video evidence" without any explanation for that

9

decision weighed in favor of finding requisite intent); *Est. of Hill ex rel. Grube v. NaphCare, Inc.*, No. 20-410, 2022 WL 1464830, at *12 (W.D. Wash. June 8, 2023) ("Courts have [] found the 'intent to deprive' when a litigant selectively preserves ESI which it knows to be relevant without a credible explanation, allowing some portions to be overwritten by automatic procedures.")

Second, preservation of the video was admittedly subjective and content-based, with the most relevant portion of the video (the period of time before the incident) being the shortest portion of the clip. The Court finds that the fact that the video was preserved in this manner rather than, for example, based on a more objective standard (*e.g.*, saving 30 minutes before the incident and 30 minutes after) weighs against Outback when it comes to the question of intent.

Further, Outback assigned the task of saving video footage to its restaurant manager, yet, as mentioned above, it had no policy in place to guide the employee in the preservation of critical video evidence. ECF 57-7 at 21. Rather, to fulfil its duty to preserve evidence, Outback relied solely upon the judgment of the restaurant manager. The lack of guidance is troubling and failure to provide it appears to the Court to be intentional, as Outback is no stranger to slip and fall litigation. At the time of the incident or immediately thereafter, Outback knew that litigation was reasonably likely and was aware of the importance of preserving evidence. It apparently had other policies in place to be followed by its managers in the event of a slip and fall incident. Indeed, Shannon was required to call a "hotline" to report the incident and answer a series of questions (which, as noted below, Outback states was done in anticipation of litigation). ECF 57-7 at 26-27. Immediately after Ms. Nagy was taken from the premises by ambulance, Shannon took photos of the area where the incident occurred. *Id.* at 29. In this context, absent a policy to follow, Shannon preserved some but not all of the most pertinent video evidence while allowing

the rest to be overwritten. Thus, the video at issue here was not merely overwritten in the normal course. It was affirmatively not preserved after being viewed by an Outback employee and claims administrator, and it was allowed to be overwritten.

The Court notes that the video produced by Outback clearly shows Ms. Nagy slipping and then falling. It seems self-evident that a person viewing and preserving the video would, at a minimum, want to see enough video footage to answer the most basic questions relevant to that incident, such as whether a slippery substance had been deposited on the floor and whether the floors were inspected in accordance with Defendants' policies. Yet video footage that would have answered these questions was not preserved. This again weighs against Outback on the question of intent.

Defendants attempt to distinguish case law cited by Plaintiffs where spoliation/bad faith was found by noting that in cases cited by Plaintiffs, no video footage was produced at all. Here, Defendants argue there can be no bad faith because video was produced that the manager on duty, in his judgment, deemed appropriate to preserve. However, the fact that some video was produced versus no video is a distinction with little difference. Indeed, if the Court were to accept Outback's argument, a litigant such as Outback could avoid its preservation obligations by simply producing incomplete video footage preserved by an untrained employee, rather than no video footage, without consequence.  In this case, whether no video was produced or an incomplete selectively-preserved clip was produced, the result is same; namely, that Plaintiffs are deprived of evidence relevant to the claims in this case. The Court finds sufficient evidence here to establish the intent to deprive Plaintiffs of video footage from the time period prior to Ms. Nagy's fall.

4. Sanctions

Having determined that Defendants acted with the requisite intent, this Court may, in its discretion, employ the measures set forth in Rule 37(e)(2). This Rule provides that if a court finds a party committed spoliation of ESI with an intent to deprive another party of the information's use in the litigation, the Court may consider whether sanctions such as an instruction to the jury "that [the jury] may or must presume the information was unfavorable to the party" or entry of default judgment, are warranted. Fed. R. Civ. P. 37(e)(2).

Plaintiffs here seek a mandatory adverse inference jury charge with respect to the video footage. ECF No. 87 at 1. Specifically, Plaintiffs request that the jury be instructed that it must presume the lost video footage would have been unfavorable to Outback. The Third Circuit has set forth three factors district courts must consider when contemplating Rule 37 sanctions:

> (1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future.

*GN Netcom, Inc. v. Plantronics, Inc.*, 930 F.3d 76, 82 (3d Cir. 2019) (quoting *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994)). First, Outback, in determining that it would save some, but not all of the pertinent video footage, is completely at fault for the loss of the evidence. Second, Plaintiffs have been prejudiced in that the video footage from the surveillance camera could have been probative of several key issues in this case, such as whether Outback has actual or constructive notice of a slippery substance on the floor and whether employees acted in accordance with the restaurant's policies for checking the floors. Third, the Court finds that an adverse inference instruction is warranted here. It is a lesser sanction than a dispositive one and is appropriate to address the prejudice here. In the range of available

12

sanctions for spoliation of evidence, "an adverse inference instruction is a relatively minor sanction." See Shin Da Enterprises Inc. v. Yong, No. 21-3384, 2022 WL 17178299, at *7 (E.D. Pa. Nov. 23, 2022). However, rather than the mandatory inference sought by Plaintiffs, the Court finds a more permissive adverse inference instruction is appropriate. The Court, therefore, grants Plaintiffs' motion to the extent that the jury may be instructed that Outback intentionally failed to preserve the disputed video evidence and that the jury may presume that the lost video footage was unfavorable to Outback.

### B. The Incident Report

Plaintiffs seek a spoliation finding regarding an "incident report" that was allegedly not produced during discovery. Plaintiffs point to the deposition testimony of Shannon, who testified that he called a "hotline" to report Ms. Nagy's fall and was given a "report number." ECF No. 57-7 at 26. According to Defendants, at the time of the incident, Outback's Third-Party Administrator, Gallagher Bassett, utilized another vendor for purposes of handling the "hotline" calls. ECF No. 64-1 ¶11. Defendants assert that there is no specific incident report prepared by Outback, but rather the information provided by Shannon was recorded electronically by the then insurance claims handling vendor. Id. at ¶¶ 12-13.

To the extent that Plaintiffs seek a finding of spoliation with respect to an incident report, that motion is denied. The information sought (assuming without deciding that the existing information can be deemed an "incident report") is ESI[4], and Plaintiffs have not established entitlement to spoliation relief under Rule 37(e). Simply put, Plaintiff has not established any of the requisite elements.

---

[4] Outback has provided the Court *in camera* a "screen shot" of the information collected from Shannon by its then insurance claims handling vendor. Outback contends that the information is privileged as was collected in anticipation of litigation.

13

Rather, this is a discovery issue, and a belated one at that. By way of a letter in April 2019, Plaintiffs requested, among other things, copies of all incident reports. ECF 87-2. None were provided. Plaintiffs then learned of the possible existence of an incident report at Shannon's deposition in October 2019. Following that deposition, in November 2019, Plaintiffs served a Notice to Produce seeking, among other things, copies of any incident reports. Outback served its responses to the Notice in January 2020 and did not provide a copy of an incident report. Outback objected to the request on privilege grounds, ECF 64-1 at ¶ 5, but Outback did not provide a privilege log referencing any report.

Almost the entirety of Plaintiffs' argument regarding the existence of an incident report is centered on Shannon's 2019 deposition testimony. Yet it appears that for years after that deposition and Plaintiffs' subsequent discovery request, Plaintiff undertook no further efforts to either obtain or confirm the existence of an incident report when none was produced. Plaintiffs cannot simply sit on the issue and then attempt to seek spoliation sanctions on the eve of trial. There is no representation that Plaintiffs attempted to meet and confer with Outback on the issue, nor does it appear that the issue was raised to the Court by way of letter or telephone conference. *See* L. Civ. R. 37. 1 ("Counsel shall confer to resolve any discovery dispute. Any such dispute not resolved shall be presented by telephone conference call or letter to the Magistrate Judge. This presentation shall precede any formal motion.") Rather, Plaintiffs first raised to the Court the issue of an alleged missing incident report in November 2022, in their *reply* brief to the spoliation motion. As such, even if the Court was inclined to construe Plaintiffs' motion as one to compel production of any incident report, it would be denied.

**IV. Conclusion and Order**

For the reasons above,

**IT IS** on this 20th day of February 2024

**ORDERED** Plaintiffs' motion [ECF No. 57] for spoliation sanctions is GRANTED IN PART and DENIED IN PART; and it is further

**ORDERED** that, at trial, Plaintiffs shall be entitled to an adverse inference jury instruction. The jury may be instructed that Outback intentionally failed to preserve the disputed video evidence and that the jury may presume that the lost video footage was unfavorable to Outback.

*s/ Douglas E. Arpert*
DOUGLAS E. ARPERT
United States Magistrate Judge

--terminates ECF No. 57